# CHARLESTON.

BOND *et. ux. v.* DAVIS.

Decided April 14, 1900.

1. APPEAL.—*Review—Harmless Error.*
   A case in which the maxim, "*De Minimis non curat lex,*" applies.

Appeal from Circuit Court, Harrison County.

Bill by Luther H. Bond and Margaret J. Bond, his wife, against C. H. Davis and others. Decree for plaintiffs, and defendant Davis appeals.

*Dismissed.*

LEWIS C. LAWSON, for appellant.

E. G. SMITH, for appellees.

MCWHORTER, PRESIDENT:

John L. F. Randolph executed his will April 27, 1885, as follows: "First, I desire that my funeral expenses and just debts be paid out of my personal effects as soon after my death as practicable. Then I desire that my executor shall provide for and maintain my crippled daughter, Mary Jane Randolph, in a good and comfortable manner, as long as she shall live, out of my estate. Then I will, devise, and bequeath all my property, both real and personal, to my beloved wife, Bashaba Randolph, as long as she lives; and at her death I desire that my estate, both real and personal, be divided equally between my four children, Joel F. Randolph, Thos. F. Randolph, Stephen F. Randolph, and Ruth Randolph: provided, further, that at the

death of my beloved wife her funeral expenses shall be paid out of my estate before it is divided as before stated. I have heretofore given to my children Delila Ann Richardson, Asa F. Randolph, Tasa Jane Bee, children by my first wife, and James J. F. Randolph, Gideon H. F. Randolph, and Cecelia Ann Randolph, children by my second wife, all that I intend for them. I appoint my beloved wife and my esteemed friend Randolph Davis executors of this, my last will and testament." After the death of the wife, Bashaba, the real estate so devised was partitioned among the said four children,—there being allotted to said Thomas B. F. Randolph in said partition a parcel of land containing, by metes and bounds, twenty-five acres, as one-fourth in value of the real estate partitioned, and a similar tract was allotted to each of the other three; and by the decree of the court making the partition, and to carry out the purpose of the said will, each of said parcels was charged with one-fourth of the cost of the support of said Mary Jane Randolph during her life, and the same was made a charge and lien upon the said parcels, respectively. By deed of October 5, 1892, Thomas B. F. Randolph, and Estella B. F. Randolph, his wife, conveyed to Luther H. Bond, with general warranty, a lot out of said twenty-five acres containing one-half of one acre, described by metes and bounds, for the consideration of two hundred dollars. On the 14th day of January, 1895, by like deed, Luther H. Bond and Margaret J. Bond, his wife, conveyed the same to William G. Plant; by like deed, dated April 17, 1895, William G. Plant and Myrtle, his wife, conveyed the same lot to Margaret J. Bond, the wife of Luther H. Bond; and by deed of March 9, 1896, said Luther H. Bond and Margaret J. Bond, his wife, in consideration of seven hundred dollars, conveyed one-half of said half-acre lot to C. H. Davis, with covenants of general warranty (describing said quarter-acre lot so conveyed by metes and bounds), of which consideration one hundred and twenty-five dollars was paid in cash, and the residue represented by two notes, for two hundred and eighty-seven dollars and fifty cents each, made by said C. H. Davis, payable to Margaret J. Bond one year and eighteen months after date, respectively, with interest from date, and both dated March 9, 1896, and a lien retained in said deed to secure the payment of said deferred payments of purchase money. In December, 1897, M. J. Bond and Luther H. Bond filed their bill in the circuit court of Har-

rison County to enforce the lien for the purchase money represented by the said two notes, of two hundred and eighty-seven dollars and fifty cents each, no part of either of which, as alleged, had been paid, except thirty-three dollars paid April 14, 1897. The deed from Bond and wife for the one-fourth acre tract contained this provision: "The parties of the first part agree to remove all claims and judgments against lot before notes are paid." Plaintiffs filed an amended bill, in which the purchaser, C. H. Davis, Mary Jane Randolph, and James Randolph, committee of Mary Jane Randolph, were made parties defendant, exhibiting the deed of March 9th, 1896, and the two notes; alleging that the purchase money was all past due and unpaid, except the small payment of thirty-three dollars April 14, 1897, and setting up the lien retained for the purchase money; alleging that the title was perfect in them prior to their conveyance to said Davis, excepting the lien of certain judgments and a certain deed of trust, all of which had long since been fully released and discharged, and excepting, also, a lien for an insignificant amount in favor of Mary J. Randolph, which it was impossible to have released, and which it was especially understood and agreed between the parties to said deed should not be released, but it was agreed between them that all other incumbrances upon said land, save only that in favor of said Mary J. Randolph, should be released before said notes were fully paid, which understanding and agreement, so far as the removal of said incumbrances was concerned, had been fully complied with; that defendant Davis took said deed with full knowledge of said incumbrance for said maintenance on said land, and absolutely agreeing and contracting to wholly pay said notes when they became due; that said Mary J. Randolph was forty-five years old, an idiot or mental imbecile, and had been from her birth; that defendant James F. Randolph was her duly-appointed committee; that the entire expense of keeping said Mary Jane had never amounted to more than one hundred dollars per annum; that the amount of said sum chargeable on said one-fourth acre had never amounted to more than twenty-five cents per annum, and could not, under any conditions, amount to more than that; alleged that they had complied with the terms of their contract, and all the requirements thereof, and that they were ready and willing, and offered, to accept a reconveyance of said property from said Davis, and

to refund to him the one hundred and twenty-five dollars, with its interest, and all expenditures for improvements made upon said property by said Davis, and for taxes, and for any and all proper purposes, deducting therefrom a reasonable rent for said premises since it had been in the possession of said Davis under said deed, and to turn over or cancel said two notes, and refund the amount of said credit thereon, with its interest, to said Davis; and prayed for process; that a guardian *ad litem* be appointed for said Mary Jane; for all proper orders and accounts to be taken, and present value of the said incumbrance in favor of Mary Jane be ascertained, or that the same be reduced to an amount certain per annum, to be charged upon said one-fourth acre; that it be deducted from said unpaid purchase money, and the residue paid to plaintiffs, or, if the court deem it proper, to require Davis to accept the proposition for a reconveyance of said land upon condition set forth in the proposition, or upon such condition as the court should see fit to impose; that plaintiffs' lien be enforced, etc., and for general relief. Defendant Davis tendered his demurrer and answer to the bill and amended bill, and denied the material allegations of the bill, especially the allegations in relation to his knowledge of the charge upon the property for the support of Mary Jane Randolph, and the agreement and understanding as to the removal of all the liens and incumbrances except that, and the entire expense of maintaining Mary Jane, not exceeding one hundred dollars per annum, and only twenty-five cents per annum on the lot; denied that he had knowledge of said charge for maintenance until after the purchase and his possession thereunder; and averred that after discovering the same, and seeing the embarrassed condition in which it placed the plaintiffs, respondent went to plaintiffs, a long time prior to the instituting of this suit, and proposed to them that he would take up, pay off, and satisfy said purchase-money notes, provided they would take the face value of them, without any interest thereon whatever, giving credit thereon for the amount already paid, when plaintiffs positively and emphatically refused to accept said proposition, and contended that notwithstanding said insumbrance, and their agreement to clear the title of all claims and judgments, respondent should pay the full amount of said purchase money and full interest, which respondent refused to do; and avers that since the institution of this suit he had renewed the proposition to plaintiffs to so pay off and

cancel said notes in the way and manner indicated, provided plaintiffs would pay their own costs of the suit, which proposition plaintiffs refused. Some thirty pages of depositions were taken and filed in the cause. On the 21st of January, 1899, the cause was heard, the demurrer was overruled, and on the pleadings and proof the court ascertained that at the time Thomas B. F. Randolph and wife sold and conveyed the one-half acre lot to Luther H. Bond, no other part of said twenty-five acres had been sold, conveyed, or disposed of by said Thomas B. F. Randolph; that the one-fourth of the maintenance of said Mary Jane Randolph was a charge upon the said twenty-five acres, and could not be removed, except by the death of said Mary Jane, from said twenty-five acres, nor from any part thereof, including the one-fourth acre possessed by and conveyed to defendant Davis, and that plaintiffs were therefore not entitled, without giving the defendant Davis the opportunity to cancel said contract of March 9, 1896; that the defendant Davis was entitled to an election to perform or disclaim said contract, and that plaintiff Margaret J. Bond was entitled to compel Davis to make such election; and decreed that Davis should elect and file his election, in writing signed by him, with the court, on the 1st day of the then next term thereof, to specifically perform said contract and pay said two purchase-money notes, with interest thereon until paid, or disclaim said contract, and cancel said deed, and surrender the possession of said property to plaintiffs when plaintiffs should make restitution to defendant for the purchase money paid by him, together with the improvements made thereon, if any, and the taxes paid, after deducting a proper sum for the rents of the same, all of which to be ascertained by proper proceedings had therein by the court, should said defendant elect to cancel said contract and surrender the possession of the property. At the next term of said court, on the 29th of May, 1899, the defendant not having filed his election in conformity to said decree, the court ascertained the amount due from defendant to plaintiffs to be six hundred and thirty-four dollars and twenty-one cents, and decreed that defendant pay said sum to plaintiffs, with interest thereon from May 24, 1899, and the costs, and decreed the sale of said one-quarter acre lot unless it should be paid within thirty days, and appointed a commissioner to execute the decree of the court, from which decrees defendant Davis appealed to this Court, with several assignments of error.

The first question to be disposed of is that of the jurisdiction of this Court. Is this case appealable? The matter in controversy is the share of the maintenance of Mary Jane Randolph, which could or might be chargeable to the lot in controversy. The strong probability is that no part of such maintenance will, in any event, ever come against it. None ever has to this time. If the doctrine of liability in the inverse order of alienation, as laid down in 2 Story, Eq. Jur. Sec. 1233, and cases there cited, obtains in this case, as it is claimed that it does, no part of the charge can ever affect it, as this lot is the one-half of the first half acre of the twenty-five acres alienated, but in the event the whole and every part of the twenty-five acres should be held for a full and fair proportion of the one-fourth of such maintenance as is chargeable against the said twenty-five acres. James F. Randolph, committee of said imbecile, testifies in the case. In answer to the question, "How much per year has it been costing you, as her committee, to take care of and provide for her?" he says: "I couldn't answer that question positively without going to the records. I would guess, from one hundred and thirty-five dollars to one hundred and sixty-five dollars per year." G. W. Randolph testifies that prior to the appointment of the committee the cost of maintaining her was less than one hundred and ten dollars a year; and Jesse F. Randolph, who, together with G. W. F. Randolph, purchased the last twenty acres of the twenty-five acres assigned to Thomas B. F. Randolph, and who had been paying the whole of the one-fourth of the maintenance of Mary Jane Randolph, testified that they had sold less than one acre of the twenty-acres for five hundred and seventy-five dollars, and had rented the nineteen acres. "Last year we rented the place for one hundred and five dollars, and had seventy-five dollars left, after paying the Thomas B. Randolph portion [of the maintenance]; and this year we rented for one hundred and twenty dollars, and have ninety dollars left." So it will be seen that for those two years the charge on the whole twenty-five acres was twenty dollars per year, and, if this had been collected from every part of the twenty-five acres evenly, it would have amounted to the sum of thirty cents per annum on the one-fourth acre held by the defendant. Suppose this maintenance should be increased four-fold; this would bring the charge against said lot to one dollar and twenty cents per year,—an increase which is not at all probable. Mary Jane Randolph was at the time of the

taking of the depositions forty-seven years of age. The charge against this one-quarter of an acre, in case it should be made liable, could in no event ever exceed, in all, the sum of thirty dollars or forty dollars.

Defendant Davis claims in his answer an offset of twenty-five dollars for failure on the part of plaintiffs to comply with their contract, in building such a veranda to the house they sold him as they agreed to build, and, in his testimony, said the damage was forty dollars,—to make the veranda they built what it was to be under the contract. It appears that, to allow him every· thing he could possible establish under a decree of reference, it would fall far short of reducing the decree rendered against him to the extent of one hundred dollars. If the maxim, *"De minimis non curet lex,"* cannot properly be invoked in this case, it should no longer find a place among maxims of law. I conclude that the appeal was improvidently awarded, and should be dismissed.

BRANNON, JUDGE, (*Concurring*) :

I concur because the remoteness of chance of the property being charged with maintenance of Mary Jane Randolph makes it in equity, no incumbrance; secondly, because the purchaser refused to rescind, and elected to take the remote chance.

*Dismissed.*